UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
ALFRED TRIPPETT, on behalf of himself and all :  Case no.  1:25-cv-5965
others similarly situated, :
 :
Plaintiffs, :
 :  CLASS ACTION COMPLAINT
v. :  AND
 :  <u>DEMAND FOR JURY TRIAL</u>
FREESTYLE SNACKING LLC, :
 :
Defendant. :
 :
 :
------------------------------------- x

## **<u>INTRODUCTION</u>**

1. Plaintiff, Alfred Trippett (hereinafter "<u>Plaintiff</u>"), brings This action on behalf of himself and all other persons similarly situated against Freestyle Snacking LLC (hereinafter "<u>Defendant</u>"), and states as follows:

2. Plaintiff is legally blind and relies on screen-reading software to access website content. Like many others who fall within the legal definition of blindness, he requires websites to follow accessible design standards in order to browse and complete transactions independently.

3. According to the U.S. Census Bureau and the American Foundation for the Blind, millions of individuals across the country, including hundreds of thousands in New York, live with visual impairments. These individuals depend heavily on the internet to shop, research, and participate in modern life.

4. Despite the availability of accessible technology, Freestyle Snacking LLC operates its website, www.freestylesnacking.com (the "Website"), in a way that excludes blind users. The Website lacks

1

key accessibility features, making it difficult or impossible for visually impaired consumers to use the site without assistance. This prevents independent browsing and purchasing, and denies blind users equal access to the goods and services offered through the Website.

5. Sighted users can shop and purchase products directly through the Website, but blind users are blocked by improperly labeled links, inaccessible cart functionality, missing alt text, and other design failures. Rather than adopting widely available accessibility tools and standards such as WCAG 2.2, Defendant has chosen to rely on an interface that is entirely visual.

6. As a result, Plaintiff and others similarly situated are excluded from full and equal participation in Defendant's online marketplace. This violates the Americans with Disabilities Act and state and local anti-discrimination laws.

7. Plaintiff attempted to browse and purchase an assortment of olives from the Website. Despite his efforts, the site's barriers made it impossible to complete the transaction. Unless changes are made, the Website will continue to be inaccessible to him and others like him.

8. Plaintiff brings this lawsuit to secure injunctive relief requiring Defendant to bring the Website into compliance with accessibility standards, as well as to recover damages for the unlawful discrimination blind users have faced

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. The Court also has supplemental jurisdiction over Plaintiff's related

claims under the New York State Human Rights Law and the New York City Human Rights Law pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts a substantial amount of business in this District and the events giving rise to the claims occurred here. Plaintiff accessed the Website while located in this District and experienced discrimination based on his disability as a result of its inaccessibility.

14. Defendant markets and sells products directly to consumers in New York through its Website. Defendant purposefully targets New York residents as customers, and it is routine for Defendant to engage in business transactions with individuals in this District.

15. The acts and omissions giving rise to Plaintiff's claims occurred within this District. Courts have consistently held that venue is proper where a plaintiff attempted to access an inaccessible website, even if the website itself is operated from another jurisdiction. See Access Now, Inc. v. Otter Products, LLC, 280 F. Supp. 3d 287 (D. Mass. 2017); Access Now, Inc. v. Sportswear, Inc., No. 17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018).

**PARTIES**

16. Plaintiff is a legally blind individual who resides in New York County, New York. He is a member of a protected class under the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law.

17. Plaintiff is unable to use a computer without the aid of screen-reading software. Because of the inaccessibility of the Website, Plaintiff has been denied the full use and enjoyment of the goods and services made available through it.

18. Defendant, Freestyle Snacking LLC, operates a commercial website located at www.freestylesnacking.com. The Website markets and sells healthy snack olives designed to stay firm and fresh in packaging. It allows consumers to browse product descriptions, select items, and make purchases directly online.

19. The Website is a place of public accommodation within the meaning of Title III of the ADA. See, e.g., Andrews v. Blick Art Materials, LLC, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. Aug. 1, 2017). The Website's inaccessibility has deterred Plaintiff from making an online purchase and has denied him the equal access required by law.

## NATURE OF THE CASE

20. The internet is an essential tool for commerce, information, and day-to-day life. People use websites to shop, research products, manage their finances, and engage with businesses of all kinds. This includes blind and visually impaired individuals, who rely on screen-reading software and keyboard navigation to access digital content.

21. Screen-reading software vocalizes what appears on the screen, allowing blind users to navigate the internet independently. But for that software to work, websites must be coded in ways that allow the content to be rendered into text. Without accessible design, screen readers cannot convey critical information, and blind users are blocked from accessing the same content available to sighted users.

22. To achieve accessibility, websites must meet basic standards such as including alt text on images, ensuring all functions are operable by keyboard, labeling all elements properly, and avoiding inaccessible coding practices like untagged pop-ups or mouse-dependent navigation.

23. JAWS and NVDA are two of the most commonly used screen readers for Windows. These programs follow standards published by the World Wide Web Consortium (W3C), known as the Web Content Accessibility Guidelines (WCAG). WCAG 2.2 provides the baseline guidance for making websites accessible and is widely accepted by courts and regulatory bodies alike. These standards are also embedded in Section 508 of the Rehabilitation Act, which governs government websites but is commonly used to assess private site accessibility.

24. Compliance with these standards is readily achievable and already implemented by many companies. However, Defendant has chosen not to adopt them, leaving its Website incompatible with screen-reading software and functionally unusable for blind individuals.

## FACTUAL ALLEGATIONS

25. Defendant owns and operates the Website, which offers healthy snack olives for sale directly to consumers. The Website is accessible nationwide, including to users in New York State.

26. The Website serves as Defendant's digital storefront. It allows users to browse various olive assortments, review nutritional information, view product photos, and complete purchases. It also includes account login, a shopping cart, pop-up messages, and other transactional features.

27. This action arises from Defendant's policy and practice of failing to make the Website accessible to blind individuals. Because of the accessibility barriers on the Website, Plaintiff and other blind users are unable to fully and independently navigate the site, browse products, or make purchases.

28. These barriers prevent Plaintiff from enjoying equal access to the goods, services, and benefits that Defendant offers to the general public. The design of the Website blocks screen-reading software

5

from properly communicating content, and many interactive features are either inaccessible or non-functional without sight.

29. Plaintiff uses the NVDA screen reader and relies on keyboard navigation. When visiting the Website on June 19 and again on July 15, 2025, Plaintiff encountered multiple accessibility issues that prevented him from purchasing the assortment of olives he intended to buy.

30. Specifically, Plaintiff found that many links were unlabeled or merely said "here" or displayed raw file names, which gave no indication of their purpose. Price information was often not read aloud or was misread by the software. The shopping cart, search bar, and account features were either unreadable or failed to announce actions such as items being added to the cart. The cart interface continued navigating the background site even when it appeared visually active. Key pop-up messages were not announced at all, and many critical features were not operable using a keyboard alone.

31. These failures created a frustrating and ultimately unusable experience for Plaintiff. He could not complete a transaction or independently engage with the site in the same way a sighted person could.

32. In addition to the issues Plaintiff personally encountered, the Website contains numerous violations documented in the attached SortSite accessibility report. These include missing or empty alt attributes on images, duplicate IDs, unlabeled form fields, and broken ARIA references, all of which prevent screen readers from properly parsing and announcing content. The site also fails to provide appropriate heading structures and semantic markup, making navigation via keyboard and assistive technology unnecessarily difficult and confusing.

33. These accessibility barriers are widespread and systemic. They affect every aspect of the Website, from browsing product details to completing a checkout. As a result, blind users are not just inconvenienced—they are excluded from using the Website altogether.

34. Plaintiff was actively seeking to purchase snack olives and would have completed a transaction had the Website been usable. Instead, he was denied that opportunity solely because of his disability. He remains interested in the products and intends to revisit the Website once accessibility barriers are removed.

35. Unless Defendant makes the necessary modifications, Plaintiff and other blind individuals will continue to be excluded from accessing and benefiting from the Website. The harm is ongoing and irreparable without court intervention.

36. Defendant's conduct demonstrates a knowing disregard for accessibility obligations. Despite the existence of well-established standards, widespread business adoption, and straightforward implementation options, Defendant has failed to take meaningful steps to remove the access barriers. This amounts to discrimination under federal, state, and local disability laws.

37. Defendant's actions include:

38. Constructing and maintaining a website that is incompatible with screen-reading software;

39. Allowing accessibility barriers to persist despite their obvious and pervasive impact on blind users;

40. Failing to take corrective action in the face of clear discriminatory effects.

41. Defendant also employs policies and practices that have the effect of excluding blind users and perpetuating discrimination in violation of applicable civil rights laws.

7

42. As a result, Plaintiff has suffered a concrete and particularized injury directly caused by Defendant's conduct.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and all others similarly situated and seeks to represent a nationwide class under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, defined as: all legally blind individuals in the United States who have attempted to access www.freestylesnacking.com and were denied equal access to its goods and services due to accessibility barriers during the applicable statutory period.

42. Plaintiff also seeks to represent a subclass consisting of all legally blind individuals in New York State who encountered the same access barriers while attempting to use the Website during the same time period.

43. The class is so numerous that joinder of all members is impracticable. Millions of individuals in the United States are blind or visually impaired, including hundreds of thousands in New York State. The questions of law and fact raised in this action are common to all members of the class.

44. Common questions include but are not limited to:

45. Whether the Website is a place of public accommodation under the Americans with Disabilities Act;

46. Whether the Website qualifies as a place or provider of public accommodation under New York State and New York City law;

47. Whether the Website contains accessibility barriers that prevent blind users from equal participation;

48. Whether Defendant has violated federal, state, or local disability laws by failing to remove or remediate those barriers;

49. Whether injunctive relief is appropriate to require Defendant to bring the Website into compliance with accessibility standards.

50. Plaintiff's claims are typical of those of the class. Like other members of the class, Plaintiff is legally blind, uses screen-reading software, and has been unable to access the Website due to its design. Defendant's conduct affected Plaintiff in the same way it affects all other class members.

51. Plaintiff will fairly and adequately protect the interests of the class. He has retained experienced counsel with expertise in disability rights and class action litigation. Plaintiff has no interests that are antagonistic to the class.

52. Class certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act on grounds generally applicable to the class as a whole, making declaratory and injunctive relief appropriate for the entire class.

53. Alternatively, class certification is proper under Rule 23(b)(3) because common questions of law and fact predominate over any individual issues, and a class action is superior to other available methods for fairly and efficiently resolving this controversy.

54. Proceeding as a class action promotes judicial efficiency by avoiding duplicative litigation and ensuring consistent results for similarly situated individuals across the country.

55. All references to "Plaintiff" in the remainder of this Complaint shall be deemed to include the named Plaintiff and all class members unless otherwise specified.

## FIRST CAUSE OF ACTION

*(Violation of 42 U.S.C. §§ 12181 et seq. – Title III of the Americans with Disabilities Act)*

48. Plaintiff, on behalf of himself and all similarly situated individuals, realleges and incorporates by reference all preceding allegations.

49. Under Title III of the Americans with Disabilities Act ("ADA"), no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, or privileges of any place of public accommodation. See 42 U.S.C. § 12182(a).

50. The Website qualifies as a public accommodation under the ADA. It is operated by Defendant to sell goods directly to consumers and is covered under 42 U.S.C. § 12181(7).

51. Defendant is subject to Title III because it operates and controls the Website and makes its services and goods available to the public through it.

52. The ADA prohibits entities from utilizing standards or methods of administration that have the effect of discriminating based on disability. See 42 U.S.C. § 12182(b)(1)(D).

53. Defendant has violated the ADA by failing to ensure that the Website is accessible to blind individuals who use screen-reading software. This includes failing to provide alt text, readable labels, accessible forms, keyboard navigation, and other basic features required to access the Website.

54. These failures deny individuals with disabilities an equal opportunity to access and benefit from the goods and services offered on the Website. Defendant's website does not provide blind users with access equal to that of sighted users and does not include reasonable modifications necessary to accommodate individuals with disabilities.

55. There are well-established, widely available guidelines for making websites accessible to blind users, including the WCAG 2.2 standards. Incorporating these basic elements would not fundamentally alter the nature of Defendant's business or cause an undue burden.

56. Despite the availability of these solutions, Defendant has failed to implement them, resulting in discrimination against Plaintiff and the class.

57. Plaintiff and other blind individuals have been denied access to the Website and have been subjected to inferior or unequal services compared to sighted individuals.

58. These violations are ongoing. Defendant has not taken prompt or effective steps to bring the Website into compliance.

59. Plaintiff seeks injunctive relief requiring Defendant to modify the Website to ensure that it is fully accessible to individuals with visual disabilities in accordance with Title III of the ADA.

60. Plaintiff also seeks reasonable attorneys' fees, costs, and expenses as permitted under the statute.

## **SECOND CAUSE OF ACTION**

*(Violation of New York State Human Rights Law, N.Y. Exec. Law  
Article 15 (Executive Law § 292 et seq.))*

61. Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates by reference all prior allegations.

62. Under New York Executive Law § 296(2)(a), it is an unlawful discriminatory practice for any owner or operator of a place of public accommodation to directly or indirectly deny any person the accommodations, advantages, facilities, or privileges of that place based on disability.

63. The Website is a public accommodation within the meaning of Executive Law § 292(9). Defendant is a covered entity under the statute.

64. By operating the Website in a manner that is not accessible to blind individuals, Defendant has engaged in discriminatory practices in violation of state law.

65. Specifically, Defendant has refused to implement reasonable modifications to ensure that blind individuals, including Plaintiff, can access the goods and services offered on the Website. These modifications include accessible coding practices, alt text for images, keyboard operability, proper labeling of buttons and fields, and accessible navigation structures.

66. Defendant has also failed to provide auxiliary aids and services necessary to ensure equal access to the Website, such as ensuring compatibility with screen-reader software. These failures are not justified by any claim of undue burden or fundamental alteration.

67. Readily available accessibility standards such as WCAG 2.2 outline the necessary steps to ensure usability for blind individuals. Other businesses follow these standards routinely. Incorporating these features would not fundamentally alter the Website or place an undue burden on Defendant.

68. Defendant's failure to take these steps has resulted in a denial of full and equal access to blind users in New York, including Plaintiff.

69. Defendant's conduct constitutes willful and knowing discrimination. The Website's design is sufficiently obvious in its inaccessibility that Defendant either knew or should have known of its exclusionary effect on blind users. Defendant has taken no meaningful steps to fix these known problems.

70. These violations are ongoing. Plaintiff continues to be harmed by his inability to access the Website on equal terms.

71. Plaintiff seeks injunctive relief requiring Defendant to bring the Website into compliance with state disability law. Plaintiff also seeks compensatory damages, civil penalties, and attorneys' fees as provided under the New York State Human Rights Law.

## THIRD CAUSE OF ACTION

*(Violation of New York State Civil Rights Law,*
*NY CLS Civ R, Article 4 (CLS Civ R § 40 et seq.))*

78. Plaintiff, on behalf of himself and all similarly situated individuals, realleges and incorporates all prior allegations.

13

79. Under New York Civil Rights Law § 40, all persons within the state are entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, without discrimination based on disability.

80. Section 40-c(2) further provides that no person shall be subjected to discrimination in their civil rights based on disability by any individual, corporation, or institution.

81. The Website constitutes a place of public accommodation under this law. Defendant is a covered entity responsible for maintaining and operating the Website.

82. By failing to make the Website accessible to blind users, Defendant has denied individuals with visual impairments the full and equal use of its digital services, in direct violation of Civil Rights Law §§ 40 and 40-c.

83. These violations are not technical or isolated. The Website is systemically inaccessible to screen-reader users. Defendant has failed to follow long-established accessibility principles and has disregarded its duty to provide equal access to persons with disabilities.

84. New York Civil Rights Law § 41 provides for statutory penalties of $100 to $500 for each violation. These penalties are recoverable by the aggrieved individual in a court of competent jurisdiction.

85. Plaintiff has served notice of this action on the Attorney General of the State of New York, as required by § 41.

86. Defendant's conduct is ongoing. Without intervention by the Court, Plaintiff and other blind individuals will continue to be denied equal access to the Website and subjected to discriminatory treatment.

87. Plaintiff seeks compensatory damages, statutory penalties for each violation, and reasonable attorneys' fees and costs under §§ 40, 40-c, and 41.

### FOURTH CAUSE OF ACTION

*(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, et seq.)*

88. Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates by reference all preceding allegations.

89. Under the New York City Human Rights Law, it is unlawful for any owner or operator of a place or provider of public accommodation to directly or indirectly deny access to any accommodations, advantages, facilities, or privileges based on disability. See N.Y.C. Admin. Code § 8-107(4)(a).

90. The Website qualifies as a place of public accommodation under § 8-102(9), and Defendant is a covered entity under § 8-102(1).

91. Defendant has violated the City Human Rights Law by operating a Website that is not accessible to blind individuals, including Plaintiff. The Website lacks the accommodations necessary to enable screen-reader users to navigate and use the site independently and effectively.

92. Under § 8-107(15)(a), entities covered by the law are required to provide reasonable accommodations to persons with disabilities, including modifications to policies and practices, where necessary to afford access to their services. Defendant has failed to do so.

93. Defendant's inaccessibility is neither a minor oversight nor a technical error. The Website is structurally incompatible with screen-reading technology and lacks basic features that would allow

blind users to navigate it—despite widespread availability of solutions and clear guidance from WCAG 2.2 standards.

94. This failure constitutes intentional and ongoing discrimination against blind individuals in New York City. Defendant has either actual knowledge of these issues or should have known of them based on the Website's obvious inaccessibility.

95. Plaintiff seeks injunctive relief compelling Defendant to bring the Website into compliance with applicable accessibility laws. Plaintiff also seeks compensatory damages, civil penalties, and reasonable attorneys' fees and costs under §§ 8-120(8) and 8-126(a).

## **FIFTH CAUSE OF ACTION**

*(Declaratory Relief)*

96. Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates all preceding allegations.

97. An actual controversy exists between the parties. Plaintiff contends that Defendant's Website is inaccessible to blind users and violates multiple anti-discrimination statutes, including the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law.

98. Defendant either denies this or refuses to take action to remedy the discriminatory barriers on the Website.

99. A judicial declaration is necessary so that the rights and obligations of the parties are clarified. Plaintiff seeks a declaration that Defendant's Website, in its current form, denies equal access to

individuals with visual disabilities and fails to comply with federal, state, and local disability access laws.

100. Such a declaration will serve a useful purpose in guiding the parties' future conduct and in preventing further discrimination.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Website is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Website, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h) For pre- and post-judgment interest to the extent permitted by law; and

i) For such other and further relief which this court deems just and proper.

Dated: Manhasset, NY
July 21, 2025

GABRIEL A. LEVY, P.C.
*Attorney for Plaintiff*

**/s/ *Gabriel A. Levy, Esq.***

By: GABRIEL A. LEVY, ESQ (5488655)
    1129 Northern Blvd, Suite 404
    Manhasset, NY 11030
    Tel: +1 347-941-4715
    Email: Glevy@glpcfirm.com